IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
QUENTON D. HOLMAN,              )
                                )
         Plaintiff,             )
                                )
     v.                         )    1:23cv618
                                )
A.T. WIGGS, et al.,             )
                                )
         Defendants.            )
```

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on the "Motion to Dismiss" (Docket Entry 16)[1] (the "Motion") filed by Kaleb Kluttz and Todd Wiggs (collectively, the "Defendants"). For the reasons that follow, the Court should deny the Motion.

### BACKGROUND

Alleging that Defendants assaulted him during his arrest on August 27, 2021, Quenton D. Holman (the "Plaintiff") sued, among others, an "Unidentified Duke Campus Police Officer" (Docket Entry 2 (the "Complaint") at 4)[2] and Defendants, agents with the North Carolina Alcohol Law Enforcement Division (the "ALE") (see id. at

---

[1] For legibility reasons, this Opinion uses standardized spelling, capitalization, and punctuation and omits the words "Moving" and "the ALE" before "Defendants" in all quotations from the parties' materials.

[2] Docket Entry page citations utilize the CM/ECF footer's pagination.

3), pursuant to 42 U.S.C. § 1983.[3]  (See id. at 1-9.)  "Because Plaintiff [wa]s a prisoner seeking redress from a governmental entity or officer or employee of a governmental entity, this Court ha[d] an obligation to review [his] Complaint" pursuant to 28 U.S.C. § 1915A.  (Docket Entry 7 (the "Screening Order") at 1 (brackets and internal quotation marks omitted).)  In conducting that review, the Court concluded "that Plaintiff's individual capacity claims against Defendants . . . and the Unidentified Duke Campus Police Officer [should] be allowed to proceed, but that all other claims [should] be dismissed."  (Id. at 7; see also Docket Entry 13 at 3 (adopting Screening Order and "order[ing] that Plaintiff's individual capacity claims against Defendants . . . and the Unidentified Duke Campus Police Officer are allowed to proceed but that all other claims are dismissed pursuant to 28 U.S.C. § 1915A for failing to state a claim upon which relief may be granted or seeking monetary relief against a defendant who is immune from such relief" (bold and all-caps font omitted)).)[4]

As the Screening Order explains:

> The Complaint alleges that Defendants . . . arrested Plaintiff and that, while Plaintiff was handcuffed, Kluttz pulled him to his knees, Wiggs delivered a forearm

---

[3] "Section 1983 authorizes a plaintiff to sue for an alleged deprivation of a federal constitutional right by an official acting under color of state law."  Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (internal quotation marks omitted).

[4] This ruling moots Defendants' official capacity dismissal arguments (see Docket Entry 17 at 15).

2

> blow that knocked Plaintiff to the ground and immobilized him, and Kluttz then proceeded to repeatedly strike Plaintiff's torso with his knee, breaking several of Plaintiff's ribs. The Unidentified Officer allegedly helped to subdue Plaintiff initially, but then backed off and simply watched without intervening as Wiggs and Kluttz assaulted Plaintiff. These allegations are sufficient to state claims for relief against these three [d]efendants in their individual capacities at this time.

(Docket Entry 7 at 3-4.)

Notwithstanding this analysis and conclusion, Defendants "mov[ed] to dismiss [the] Complaint pursuant to Rules 12(b)(1), (2), and (6) of the Federal Rules of Civil Procedure" (the "Rules") (Docket Entry 16 at 1 (citation omitted)), for, inter alia, allegedly "fail[ing] to state a claim upon which relief can be granted" (id.). In particular, Defendants' supporting memorandum asserts that qualified immunity and public official immunity[5] protect them from Plaintiff's claims. (See Docket Entry 17 at 7-16.) Plaintiff responded in opposition to the Motion. (See Docket Entries 23-25.) Defendants failed to reply to Plaintiff's opposition. (See Docket Entries dated Mar. 4, 2024, to present.)

---

5 "North Carolina courts refer to this form of immunity as 'public officer immunity' and 'public official immunity,' interchangeably, though the trend seems to indicate that 'public official immunity' is more common now." Hines v. Johnson, No. 1:19cv515, 2020 WL 1516397, at *16 n.8 (M.D.N.C. Mar. 30, 2020).

3

## **DISCUSSION**

### **I. Relevant Standards**

#### **A. Rule 12(b)(6) Standards**

A Rule 12(b)(6) motion "tests the sufficiency of a complaint," but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). Accordingly, in reviewing a Rule 12(b)(6) motion, the Court must "accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff." Coleman v. Maryland Ct. of App., 626 F.3d 187, 189 (4th Cir. 2010), aff'd sub nom., Coleman v. Court of App. of Md., 566 U.S. 30 (2012). The Court must also "draw all reasonable inferences in favor of the plaintiff." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks omitted). Moreover, a pro se complaint must "be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted); but see Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (explaining that the United States Court of Appeals for the Fourth Circuit has "not read *Erickson* to undermine [the] requirement that a pleading contain more than labels and conclusions" (internal quotation marks omitted)). Thus, although "[a] qualified immunity defense can be presented in a Rule 12(b)(6)

4

motion, . . . when asserted at this early stage in the proceedings, the defense faces a formidable hurdle and is usually not successful." Owens v. Baltimore City State's Att'ys Off., 767 F.3d 379, 396 (4th Cir. 2014) (internal quotation marks omitted).

To avoid Rule 12(b)(6) dismissal, a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint need not contain detailed factual recitations, but must provide "the defendant fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (internal quotation marks and ellipsis omitted). "At bottom, determining whether a complaint states . . . a plausible claim for relief . . . will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 679).

### B. Jurisdictional Standards

Under the Rules, a party may contest both the Court's subject matter jurisdiction, see Fed. R. Civ. P. 12(b)(1), and the Court's jurisdiction over that party, see Fed. R. Civ. P. 12(b)(2).[6] When,

---

6  It remains unclear whether Defendants seek dismissal of Plaintiff's Complaint on both Rule 12(b)(1) and Rule 12(b)(2) grounds, as their supporting memorandum cites only Rule 12(b)(1) in arguing for dismissal of "Plaintiff's state law claims" (Docket Entry 17 at 16) and nowhere explicitly relies upon Rule 12(b)(2)

5

as here (see Docket Entry 17 at 16), a defendant asserts that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009) (internal quotation marks omitted), "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration," id. (internal quotation marks omitted). In other words, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Id.

Similarly, to survive a Rule 12(b)(2) challenge at this stage of the proceedings, a plaintiff need only "mak[e] a prima facie

---

(see id. at 1-18). Likewise, some ambiguity exists regarding whether public officer immunity more properly raises an issue of personal jurisdiction, see Hines, 2020 WL 1516397, at *15 ("Public official immunity is likewise considered a matter of personal jurisdiction"), and/or of subject matter jurisdiction, see Green v. Howell, 274 N.C. App. 158, 164, 851 S.E.2d 673, 678 (2020) ("dismiss[ing the d]efendant's [interlocutory] appeal from the trial court's order denying his Rule 12(b)(1) motion based on the defense of public official immunity," on grounds that "den[ials of] Rule 12(b)(1) motions to dismiss based on sovereign immunity, and therefore public official immunity, are not immediately appealable because they neither affect a substantial right nor constitute an adverse ruling as to personal jurisdiction," but allowing interlocutory "appeal from the trial court's order denying [defendant's] Rule 12(b)(2) and 12(b)(6) motions to dismiss based on public official immunity," on grounds that "denial of a Rule 12(b)(2) motion premised on sovereign immunity constitutes an adverse ruling on personal jurisdiction and is therefore immediately appealable" (internal quotation marks omitted)). Nevertheless, given the nature of the applicable standards and Defendants' contentions (as discussed herein), the Court need not resolve whether Defendants' challenges more properly implicate Rule 12(b)(1) or Rule 12(b)(2).

showing in support of [his] assertion of jurisdiction." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014). And, in analyzing the personal jurisdiction issue, the Court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Id. (internal quotation marks omitted).

### C. Excessive Force Standards

The United States Supreme Court has held that:

> Where, as here, [an] excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person.

Graham v. Connor, 490 U.S. 386, 394 (1989) (ellipses in original). Accordingly, "all claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Id. at 395 (emphasis omitted).

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Id. at 396

7

(certain internal quotation marks omitted). Thus, although "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," id., courts "have consistently held that officers using unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen, do not act in an objectively reasonable manner," Jones v. Buchanan, 325 F.3d 520, 532 (4th Cir. 2003).

Although an objective test, see Graham, 490 U.S. at 397, the Fourth Amendment's reasonableness standard "is not capable of precise definition or mechanical application," id. at 396 (internal quotation marks omitted). Instead,

> its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

Id. The Court conducts this inquiry "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," id., recognizing "that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation," id. at 397. Ultimately, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances

8

confronting them, without regard to their underlying intent or motivation." Id.[7]

In addition, "[t]o establish personal liability under § 1983, . . . the plaintiff must affirmatively show that the official charged acted personally in the deprivation of the plaintiff's rights. That is, the official's own individual actions must have violated the Constitution." Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (brackets, citation, and internal quotation marks omitted); see also id. (explaining that "mere knowledge of such a deprivation does not suffice"). As a general matter, however, "an officer possesses an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers." Randall v. Prince George's Cnty., 302 F.3d 188, 203 (4th Cir. 2002) (internal quotation marks omitted). "Therefore, an officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Id. at 204 (footnote omitted). "The rationale underlying the bystander liability theory is that a bystanding officer, by

---

7 As such, Defendants' contention that "[t]he Complaint is deficient because it fails to allege that [they] lacked probable cause based on the information they had at the time and what was their state of mind" (Docket Entry 17 at 17) lacks merit. Neither the existence of probable cause nor Defendants' "state of mind" (id.) bears any relevance to Plaintiff's excessive force claim. See Graham, 490 U.S. at 396-97.

9

choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer." Id. at 204 n.24.

## II. Analysis

### A. Excessive Force Claim

Defendants contend that "any claims against [them] in their individual capacity should be dismissed because they are entitled to qualified immunity." (Docket Entry 17 at 7 (emphasis omitted).) This contention does not warrant dismissal.

To begin, Defendants have provided very limited substantive argument regarding their entitlement to qualified immunity. Initially, their supporting memorandum states:

"Plaintiff alleges that Defendants 'accosted [him] on the pretense that they saw [him] holding a bag of marijuana through a pair of binoculars. In the altercation that followed[, Plaintiff] was struck repeatedly in the neck and chest while in handcuffs by the ALE agents.'" (Id. at 8; see also id. (repeating that Plaintiff alleged "he was in handcuffs when the altercation occurred").) Then, after reviewing general authority regarding qualified immunity (see id. at 8-11), they argued as follows:

> Defendants are entitled to qualified immunity. Defendants did not violate Plaintiff's constitutional rights. However, even assuming arguendo that Plaintiff's constitutional rights were violated, officers in the same circumstances could have believed that their conduct was lawful. Thus, the officers are entitled to qualified immunity. Assuming arguendo that Plaintiff's constitutional rights were violated, *Saucier* [*v. Katz*, 533 U.S. 194 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009)] instructs that a court

10

> proceed to the second step of the qualified immunity analysis. *Saucier*, 533 U.S. at 201.
>
> Even assuming arguendo that the law applied to the facts could possibly show a constitutional violation, no existing precedent puts it "beyond debate" that the officers' actions violated the Constitution. *See, e.g.*, *Mullenix* [*v. Luna*, 577 U.S. 7 (2015)[8]], *supra*. Thus, because a reasonable officer could have believed that the officers' actions were lawful, Defendants are entitled to qualified immunity.

(Docket Entry 17 at 11 (certain italicization added) (parallel citations omitted).)

"A party waives an argument . . . by failing to develop its argument — even if its brief takes a passing shot at the issue." Grayson O Co. v. Agadir Int'l LLC, 856 F.3d 307, 316 (4th Cir. 2017) (brackets and internal quotation marks omitted). Defendants' "brief contains none of the development required" to advance its qualified immunity contention. Hensley on behalf of N.C. v. Price, 876 F.3d 573, 580 n.5 (4th Cir. 2017). "It contains no argument on [either] prong of the qualified immunity test. It contains no citation to cases actually applying [either] prong of the qualified

---

[8] Unlike here, where Plaintiff alleges that Defendants assaulted him while handcuffed (see Docket Entry 2 at 4-9), the case cited above involved the applicability of qualified immunity for an officer who attempted to stop a fleeing suspect by shooting at his car, in circumstances where the officer "confronted a reportedly intoxicated fugitive, set on avoiding capture through high-speed vehicular flight, who twice during his flight had threatened to shoot police officers, and who was moments away from encountering an[other] officer," Mullenix, 577 U.S. at 13; see also id. at 13-14 (explaining that "[t]he relevant inquiry is whether existing precedent placed the conclusion that [the defendant officer] acted unreasonably in these circumstances 'beyond debate'" (emphasis added)).

11

immunity test." Id. at 580-81 n.5. Defendants thus waived their qualified immunity argument, warranting its denial on this basis alone. See id. at 580 & n.5; see also Hill v. Carvana, LLC, No. 1:22cv37, 2022 WL 1625020, at *5 (M.D.N.C. May 23, 2022) ("It is not the Court's job to undertake the analysis and legal research needed to support a perfunctory argument, nor should a party expect [the C]ourt to do the work that it elected not to do." (citation and internal quotation marks omitted)).

Moreover, at this stage of the proceedings, Defendants' qualified immunity defense fails on the merits. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson, 555 U.S. at 231 (internal quotation marks omitted). "The protection extends to all but the plainly incompetent or those who knowingly violate the law." Raub v. Campbell, 785 F.3d 876, 881 (4th Cir. 2015) (internal quotation marks omitted). Under this doctrine, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Id. (brackets in original) (internal quotation marks omitted).

In evaluating qualified immunity, courts consider "(1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the

12

time of the alleged violation." Id.[9] A right qualifies as "clearly established" if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. In other words, "[t]he unlawfulness of the action must be apparent when assessed from the perspective of an objectively reasonable official charged with knowledge of established law." Lopez v. Robinson, 914 F.2d 486, 489 (4th Cir. 1990). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citation omitted).

In ascertaining whether a right qualified as clearly established at the time of the challenged conduct, courts within this circuit generally "need not look beyond the decisions of the [United States] Supreme Court, th[e Fourth Circuit], and the highest court of the state in which the case arose." Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir. 1999) (internal quotation marks omitted). However, in the absence of controlling precedent, a right may qualify as clearly established (1) if it appears "manifestly included within more general applications of the core constitutional principles invoked" or (2) based on "a

---

9 The Court may address these prongs in whatever order "will best facilitate the fair and efficient disposition of [the] case." Pearson, 555 U.S. at 242.

13

consensus of cases of persuasive authority from other jurisdictions." Booker v. South Carolina Dep't of Corr., 855 F.3d 533, 538-39 (4th Cir. 2017) (emphasis and internal quotation marks omitted). Conversely, in the absence of controlling authority, decisions from other jurisdictions that decline to find constitutional violations in similar circumstances can justify application of qualified immunity. See Pearson, 555 U.S. at 244-45.

Here, Plaintiff asserts that Defendants beat him "while handcuffed, restrained, and posing no threat to [any] Defendants" (Docket Entry 2 at 4; see also id. at 6, 8-9), thereby breaking his ribs (see id. at 8-9). "[T]here is controlling precedent holding that assaulting an unarmed, subdued suspect or arrestee violates the Fourth Amendment." Moore v. Peitzmeier, No. CV 18-2151, 2020 WL 94467, at *11 (D. Md. Jan. 7, 2020). Indeed, long before Plaintiff's arrest in August 2021, courts, including the Fourth Circuit, had repeatedly held that beating a non-resistant, handcuffed individual violated the Fourth Amendment. See, e.g., Jones, 325 F.3d at 532-35 (discussing and collecting cases, including Kane v. Hargis, 987 F.2d 1005 (4th Cir. 1993), establishing principle, as of at least 1990, that using force against secured individual who posed no threat "was unreasonable" and "excessive," thereby precluding award of qualified immunity to officer). Put another way:

14

> In conjunction with cases from a number of other circuits that have held that using additional force after the arrestee no longer poses a threat is unreasonable, see [id.] at 533-34 (collecting cases), the[ Jones and Kane] cases illustrate that at the time of [Plaintiff's] arrest, it was clearly established that striking an arrestee who was already under control violates the Fourth Amendment.

Moore, 2020 WL 94467, at *11. Thus, even if considered on the merits, "the Court [should] deny [Defendants'] qualified immunity" contentions at this stage of the proceedings. Id.

## B. Battery Claim

The determination that Plaintiff's Section 1983 excessive force claim survives dismissal controls disposition of Plaintiff's battery claim. See, e.g., Wardlow v. Reyes, No. 1:22cv416, 2024 WL 1935908, at *13–14 (M.D.N.C. May 1, 2024) (explaining that survival of Section 1983 excessive force claim against arresting officers mandates survival of North Carolina battery claim against such officers) (collecting cases). Under North Carolina law, an individual may pursue "a civil action for damages for assault and battery . . . against one who, for the accomplishment of a legitimate purpose, such as justifiable arrest, uses force which is excessive under the given circumstances." Myrick v. Cooley, 91 N.C. App. 209, 215, 371 S.E.2d 492, 496 (1988) (citing 6 Am. Jur. 2d Assault and Battery § 122 (1963)). "Under the common law, a law enforcement officer has the right, in making an arrest and securing control of an offender, to use only such force as may be reasonably necessary to overcome any resistance and properly discharge his

15

duties." Id., 371 S.E.2d at 496. Accordingly, "[h]e may not act maliciously in the wanton abuse of his authority or use unnecessary and excessive force." Id., 371 S.E.2d at 496 (internal quotation marks omitted); see also N.C. Gen. Stat. § 15A-401(d) (specifying circumstances under which "a law-enforcement officer is justified in using force upon another person" and noting that "[n]othing in this [provision] constitutes justification for willful, malicious or criminally negligent conduct by any person which injures or endangers any person or property, nor shall it be construed to excuse or justify the use of unreasonable or excessive force").

Importantly, "[t]he threshold for determining whether the limits of privileged force have been exceeded for purposes of liability under Section 1983 is higher than that for a normal tort action." Myrick, 91 N.C. App. at 215, 371 S.E.2d at 496. Thus, "[w]here a plaintiff brings both a § 1983 excessive force claim and a common law claim for assault and battery, the court's determination of the reasonableness of the force used with respect to the § 1983 claim controls its assault and battery analysis," 6 Am. Jur. 2d Assault and Battery § 96 (2024), at least insofar as constitutionally excessive force will be deemed to constitute a battery. See Main v. Wingler, No. 5:22cv157, 2024 WL 871384, at *9 (W.D.N.C. Feb. 29, 2024) ("The Fourth Circuit has recognized that[] 'the jurisprudence governing Fourth Amendment excessive force actions also controls a party's actions for battery and gross

16

negligence.'"); Morgan v. City of Charlotte, No. 3:22cv3, 2023 WL 4002524, at *15 (W.D.N.C. June 14, 2023) (observing that the plaintiff's North Carolina "battery claim[] . . . rises and falls with the excessive force claim"), appeal filed, No. 23-1748 (4th Cir. July 13, 2023); see also Hensley, 876 F.3d at 586-87 & n.7 (explaining that, "because [the court's] analysis of the [plaintiffs' North Carolina arrest-related] assault claim turns entirely on [its] analysis of the [defendants'] qualified immunity defense," where Section 1983 fourth-amendment excessive force claim survived summary judgment, the "plaintiffs' assault claim could proceed as a matter of law").[10]

Nevertheless, Defendants maintain that public official immunity shields them from Plaintiff's battery claim. (See Docket Entry 17 at 12-16.)[11] Under North Carolina law, "a public official,

---

[10] Given "the lower threshold [under] state law" for battery, however, conduct that does not rise to the level required for a viable Section 1983 excessive force claim can nonetheless constitute a battery. Myrick, 91 N.C. App. at 216-17, 371 S.E.2d at 497 ("conclud[ing] that a directed verdict was properly entered against [the plaintiff] on his Section 1983 claim of an unconstitutional use of excessive force by Officer Cooley," but determining "that the evidence . . . is sufficient, under the lower threshold of state law, to raise a question for the jury as to whether, considering the degree of resistance offered by [the plaintiff], Officer Cooley used an amount of force beyond that reasonably necessary to arrest and subdue [the plaintiff]," such "that the issue of common law assault and battery should have gone to the jury").

[11] To the extent that Defendants assert that public official immunity protects them from Plaintiff's fourth-amendment excessive force claim (see id. at 12-15 (arguing that public official immunity protects Defendants from "Plaintiff's claims" and from

17

Case 1:23-cv-00618-WO-LPA   Document 27   Filed 05/30/24   Page 17 of 20

engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto." Smith v. State, 289 N.C. 303, 331, 222 S.E.2d 412, 430 (1976) (internal quotation marks omitted). "The rule in such cases is that an official may not be held liable [u]nless it be alleged and proved that his act, or failure to act, was corrupt or malicious . . ., or that he acted outside of and beyond the scope of his duties." Id., 222 S.E.2d at 430 (internal quotation marks omitted). "As long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability." Id., 222 S.E.2d at 430.

However, "public officers' immunity . . . is unavailable to officers who violate clearly established rights because an officer acts with malice when he does that which a man of reasonable intelligence would know to be contrary to his duty." Bailey v.

---

"liability to Plaintiff in this case")), that contention lacks merit. "[P]ublic official immunity represents a state law defense to claims arising under state law," and thus does not impact Plaintiff's Section 1983 excessive force claim. Connell v. Adams, No. 1:22cv935, 2023 WL 2914856, at *7 (M.D.N.C. Apr. 12, 2023) (brackets, citation, and internal quotation marks omitted), report and recommendation adopted sub nom. Connell v. Russell, No. 1:22-cv-935, 2023 WL 3229968 (M.D.N.C. May 3, 2023); see also id. ("Because Plaintiff's claim here arises under Section 1983 (a federal law), public official immunity affords no relief to Defendant[s].").

Kennedy, 349 F.3d 731, 742 (4th Cir. 2003) (internal quotation marks omitted); see also Hines v. Johnson, No. 1:19cv515, 2020 WL 1516397, at *17 (M.D.N.C. Mar. 30, 2020) (explaining that "[p]ublic official immunity . . . is not available for intentional torts").[12] "Accepting the facts as [alleged in the Complaint], a man of reasonable intelligence would have known that [beating Plaintiff while handcuffed and posing no threat to others] was contrary to his duty," thereby "foreclos[ing] the availability of public officers' immunity on [Plaintiff's battery claim]" at this stage of the proceedings. Bailey, 349 F.3d at 742; see also id. at 742 n.6 ("Because we find that the acts at issue violated rights that were clearly established, an officer of reasonable intelligence would have known that the officers' actions were contrary to their duty. This is all that is required to support a finding of malice under state law, and it is clear that there is no public officers' immunity where the officers act with malice." (citation omitted)).

---

12   As the North Carolina Supreme Court has explained:

"The term 'malice,' as applied to torts, does not necessarily mean that which must proceed from a spiteful, malignant, or revengeful disposition, but a conduct injurious to another, though proceeding from an ill-regulated mind not sufficiently cautious before it occasions an injury to another. If the conduct of the defendant was unjustifiable, and actually caused the injury complained of by the plaintiff, . . ., malice in law would be implied from such conduct . . . ."

Betts v. Jones, 208 N.C. 410, 181 S.E. 334, 335 (1935) (citation omitted).

19

Accordingly, the Court should deny Defendants' request to dismiss Plaintiff's battery claim. See, e.g., Johnson v. City of Fayetteville, 91 F. Supp. 3d 775, 816 (E.D.N.C. 2015) (rejecting argument that public official immunity barred assault and battery claims where the defendant lacked qualified immunity for Section 1983 excessive force claim, explaining that, "[w]here a defendant has been denied qualified immunity as to § 1983 excessive force . . . claims, the Fourth Circuit has found denial of public official immunity on North Carolina common law assault and battery . . . claims to be appropriate").

## CONCLUSION

At this stage of the proceedings, qualified immunity and public official immunity afford Defendants no relief from Plaintiff's excessive force and battery claims.

**IT IS THEREFORE RECOMMENDED** that the Motion (Docket Entry 16) be denied.

This 30th day of May, 2024.

                                    /s/ L. Patrick Auld
                                        **L. Patrick Auld**
                          **United States Magistrate Judge**