IN THE UNITED STATES DISTRICT COURT
                   FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

QUENTON D. HOLMAN,              )
                                )
          Plaintiff,            )
                                )
     v.                         )         1:23cv618
                                )
A.T. WIGGS, et al.,             )
                                )
          Defendants.           )

             **MEMORANDUM OPINION AND RECOMMENDATION**
                **OF UNITED STATES MAGISTRATE JUDGE**

     This case comes before the undersigned United States Magistrate Judge for a recommendation on "Defendants' Motion for Summary Judgment" (Docket Entry 33) (the "Motion"). Because a genuine dispute of material fact exists, the Court should deny the Motion.

                              **BACKGROUND**

     Following his arrest on August 27, 2021, Quenton D. Holman (the "Plaintiff") sued, as relevant here, North Carolina Alcohol Law Enforcement Division ("ALE") Special Agents Todd Wiggs ("S.A. Wiggs") and Kaleb Kluttz ("S.A. Kluttz") (collectively, the "Defendants") for excessive force pursuant to 42 U.S.C. § 1983, as well as battery under North Carolina law.[1]  (See generally Docket Entry 2 (the "Complaint").)

---

     1  "Section 1983 authorizes a plaintiff to sue for an alleged deprivation of a federal constitutional right by an official acting under color of state law." Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (internal quotation marks omitted).

## I. Procedural History

Defendants "mov[ed] to dismiss [the] Complaint" (Docket Entry 16 at 1),[2] arguing that qualified immunity and public official immunity[3] shield them from Plaintiff's claims (see Docket Entry 17 at 7-16). The Court (per United States District Judge William L. Osteen, Jr.) denied Defendants' motion to dismiss because, "[a]t th[at] stage of the proceedings, qualified immunity and public official immunity afford[ed] Defendants no relief from Plaintiff's excessive force and battery claims" (Docket Entry 27 at 20). (See Docket Entry 29 at 2 (adopting Docket Entry 27).)

Again contending that they "are entitled to . . . qualified immunity . . . and [p]ublic [o]fficial [i]mmunity" (Docket Entry 34 at 1), Defendants "move for summary judgment" (Docket Entry 33 at 1). Additionally, Defendants maintain that "no genuine issues of material fact [ ] support Plaintiff's claims" (id.) because "Plaintiff has failed to provide evidence that [ ] Defendants used excessive force to arrest him, and the undisputed facts show that [Defendants'] actions were reasonable under the Fourth Amendment"

---

[2] Docket Entry page citations utilize the CM/ECF footer's pagination.

[3] "North Carolina courts refer to this form of immunity as 'public officer immunity' and 'public official immunity,' interchangeably, though the trend seems to indicate that 'public official immunity' is more common now." Hines v. Johnson, No. 1:19cv515, 2020 WL 1516397, at *16 n.8 (M.D.N.C. Mar. 30, 2020).

(Docket Entry 34 at 1).  Plaintiff opposes the Motion.  (See Docket Entry 34 at 1).  Plaintiff opposes the Motion.  (See Docket Entry 37 at 3.)

## II. Factual Record

As relevant to the Motion, Plaintiff avers:

> [Defendants] were on duty when they encountered me on August 27, 2021, at the Trinity Park Family Fare [convenience store] in Durham, NC.  When I was approached, I was struck repeatedly by . . . Defendants[], then the Duke University officer approached. . . . Defendants . . . struck me repeatedly in the ribs while I was in handcuffs.  I went to the ground and then was repeatedly struck in the torso and ribs by [S.A.] Kluttz and [S.A.] Wiggs.  I was handcuffed and laying on the ground.  The Unidentified Duke University Police officer held me to the ground by placing his hands on my neck.  [S.A.] Kluttz pulled me to my knees. . . . [S.A.] Wiggs delivered a forearm blow to my neck. . . . [S.A.] Kluttz kneed me several times to the ribs.  The Duke University Police Officer that [sic] was assisting in holding me down while [Defendants] battered me[] then withdrew when I stopped moving.  The Duke University Officer stood and watched as [S.A.] Kluttz kneed me in the ribs repeatedly.

(Docket Entry 24 at ¶¶ 11-12, 14-20 (paragraph numbers and breaks omitted).)  Consistent with these averments, Plaintiff previously stated under penalty of perjury in conjunction with the Complaint:

> [I] suffered repeated blows to the torso while in handcuffs, as [I] was lying on the ground, restrained by a total of three law enforcement officers.  The only crime [I] was believed to have committed was possession of marijuana initially. . . .  At the time of the [alleged] use of excessive force, [I] posed absolutely zero threat to officers or bystanders.  [I] was unarmed, restrained, and incapacitated by a forearm blow to the brachial nerve.

(Docket Entry 3 at 2 (internal quotation marks omitted).)

3

Conversely, S.A. Wiggs avers:

> On Friday, August 27, 2021, I was . . . working in my capacity as a Special Agent participating in enforcement operations in and around Durham, NC. On this evening, I was working with [S.A.] Kluttz.
>
> At approximately 11:15 p.m., I observed an individual, later identified as [Plaintiff], . . . retrieve a plastic bag . . . contain[ing] a substance consistent in appearance with marijuana. . . .
>
> Because I believed I observed violations of NC law pertaining to drug possession, I drove my vehicle to [Plaintiff's] location[,] approached [him, and] immediately identified myself as an ALE Agent . . . . [Plaintiff] began reaching in his bag for items that were out of my view. Fearing for my safety, I grabbed his arms in an attempt to detain him. [S.A.] Kluttz arrived and assisted me as I secured [Plaintiff] with handcuffs. . . .
>
> At one point [during a probable cause search of Plaintiff], his keys fell to the ground, and as I bent over to retrieve them, [Plaintiff] began to flee by running while still handcuffed. After approximately 50 yards, [Plaintiff] lost his shoes, his balance, and subsequently fell to the ground. At this time, [S.A.] Kluttz was at [Plaintiff's] side. [Plaintiff] immediately began kicking wildly at [S.A.] Kluttz, actively resisting arrest, and then attempt[ed] to stand up and continue his escape.
>
> When I approached and observed this assaultive behavior, I delivered a single forearm strike to [Plaintiff's] brachial nerve on the right side of his neck to gain compliance. He immediately stopped resisting, and no other strikes or force was used by [S.A.] Kluttz or me.

(Docket Entry 34 at 18-20 (paragraph numbers omitted).)

S.A. Kluttz similarly avers:

> On Friday, August 27, 2021, . . . I was working with [S.A.] Wiggs. . . . While [I was] preparing [a] citation for [another] patron, [S.A.] Wiggs informed me . . . [that Plaintiff] was holding a baggie of marijuana in his

4

hand. As I was finishing up with my patron, I observed [S.A.] Wiggs pull across the street to deal with [Plaintiff]. I finished up with my patron and went over to [S.A.] Wiggs who had [Plaintiff] pushed up against the back of the truck with his hands behind his back. I assisted [S.A.] Wiggs by putting [Plaintiff] in handcuffs while [S.A.] Wiggs had control of him.

I observed [Plaintff] to be wearing a small bag[, and] . . . I observed [S.A.] Wiggs begin a probable cause search of [Plaintiff] . . . . As [S.A.] Wiggs was instructing [Plaintiff] to step out of the road, a set of keys fell out of the bag.

[S.A.] Wiggs bent down to get the keys, at which point [Plaintiff] began to flee by running while still handcuffed. [S.A.] Wiggs and I began chasing [Plaintiff]. . . . After approximately 50 yards, [Plaintiff] lost his balance and fell to the ground in the middle of the road. I quickly grabbed [Plaintiff] by his left arm to gain control of him, and began to give verbal commands for [Plaintiff] to stay on the ground. [Plaintiff] did not comply and continued to actively resist by kicking his feet at me and trying to stand up. [S.A.] Wiggs assisted me and helped get [Plaintiff] under control.

An unknown Duke University Police Officer was in a neighboring parking lot and observed the situation taking place and jumped the fence to come and assist us.

(Id. at 24-25 (paragraph numbers omitted).)

Defendants also submitted a copy of the "[ALE] Report of Enforcement Activity" (id. at 29) describing Plaintiff's arrest, which generally accords with the foregoing averments of S.A. Wiggs (see id. at 17-22) and S.A. Kluttz (see id. at 23-26), including that S.A. Wiggs "delivered a single right forearm strike to [Plaintiff's] brachial nerve on the right side of his neck" (id. at 31).

5

## DISCUSSION

### I. Relevant Standards

### A. Summary Judgment Standards

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The movant bears the burden of establishing the absence of such dispute.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Because the Court "tak[es] the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party," Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc), that "party is entitled to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, and all internal conflicts in it resolved favorably to him," Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (brackets and internal quotation marks omitted).  "If, after reviewing the record as a whole, [the Court] find[s] that a reasonable jury could return a verdict for [the nonmoving party], then a genuine factual dispute exists and summary judgment is improper."  Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996).

## B. Excessive Force and Battery Standards

Defendants seek summary judgment on Plaintiff's excessive force and battery claims. (See Docket Entry 34 at 1.) As the United States Supreme Court has explained:

> Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person.

Graham v. Connor, 490 U.S. 386, 394 (1989) (ellipses in original). Accordingly, "all claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[] . . . ." Id. at 395 (emphasis omitted).

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396 (internal quotation marks omitted). Thus, although "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," id., courts "have consistently held that officers using

7

unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen, do not act in an objectively reasonable manner," Jones v. Buchanan, 325 F.3d 520, 532 (4th Cir. 2003).

Although an objective test, see Graham, 490 U.S. at 397, the Fourth Amendment's reasonableness standard "is not capable of precise definition or mechanical application," id. at 396 (internal quotation marks omitted). Instead,

> its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

Id. The Court conducts its inquiry "from the perspective of a reasonable officer on the scene," id., and its determination of "excessive[ force] turns on the information possessed by the officer at the moment that force is employed," Harris v. Pittman, 927 F.3d 266, 272 (4th Cir. 2019) (internal quotation marks omitted). As such, "force justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated." Waterman v. Batton, 393 F.3d 471, 481 (4th Cir. 2005).

In turn, North Carolina law permits "a civil action for damages for assault and battery . . . against one who, for the accomplishment of a legitimate purpose, such as justifiable arrest, uses force which is excessive under the given circumstances." Myrick v. Cooley, 91 N.C. App. 209, 215, 371

S.E.2d 492, 496 (1988). "Under the common law, a law enforcement officer has the right, in making an arrest and securing control of an offender, to use only such force as may be reasonably necessary to overcome any resistance and properly discharge his duties." Id. Accordingly, "[h]e may not act maliciously in the wanton abuse of his authority or use unnecessary and excessive force." Id. (internal quotation marks omitted).

Importantly, "[t]he threshold for determining whether the limits of privileged force have been exceeded for purposes of liability under Section 1983 is higher than that for a normal tort action." Id. (citation omitted). Thus, "[w]here a plaintiff brings both a [Section] 1983 excessive force claim and a common law claim for assault and battery, the [C]ourt's determination of the reasonableness of the force used with respect to the [Section] 1983 claim controls its assault and battery analysis," 6 Am. Jur. 2d Assault and Battery § 96 (2025) (footnote omitted), at least insofar as constitutionally excessive force will be deemed to constitute a battery. See Johnston v. Hefner, No. 5:24cv138, 2025 WL 2417760, at *9 (W.D.N.C. July 16, 2025) ("The Fourth Circuit has recognized that[] 'the jurisprudence governing Fourth Amendment excessive force actions also controls a party's actions for battery and gross negligence.'" (quoting Njang v. Montgomery Cnty., 279 F. App'x 209, 216 (4th Cir. 2008)).

## C. Immunity Standards

Defendants also assert their entitlement to qualified immunity and public official immunity. (See Docket Entry 34 at 1.) "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). In evaluating qualified immunity, courts consider "(1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." Raub v. Campbell, 785 F.3d 876, 881 (4th Cir. 2015).[4]

A right qualifies as "clearly established" if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001). In other words, "[t]he unlawfulness of the action must be apparent when assessed from the perspective of an objectively reasonable official charged with knowledge of established law[] . . . ." Lopez v. Robinson, 914 F.2d 486, 489 (4th Cir. 1990). "This is not to say that an official action is protected by qualified immunity unless the very action in question has

---

4 The Court may address these prongs in whichever order "will best facilitate the fair and efficient disposition of [the] case." Pearson, 555 U.S. at 242.

10

previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citation omitted).

Separately, as relevant to Plaintiff's battery claim, under North Carolina's doctrine of public official immunity, "a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto." Smith v. State, 289 N.C. 303, 331, 222 S.E.2d 412, 430 (1976) (internal quotation marks omitted). "The rule in such cases is that an official may not be held liable [u]nless it be alleged and proved that his act, or failure to act, was corrupt or malicious . . ., or that he acted outside of and beyond the scope of his duties." Id. (internal quotation marks omitted).[5] Notably, "public officers' immunity . . . is unavailable to officers who violate clearly established rights because an officer acts with malice when he does that which a man of reasonable intelligence would know to be

---

5 "Malice," in this context,

> does not necessarily mean that which must proceed from a spiteful, malignant, or revengeful disposition, but a conduct injurious to another, though proceeding from an ill-regulated mind not sufficiently cautious before it occasions an injury to another. If the conduct of the defendant was unjustifiable, and actually caused the injury complained of by the plaintiff, . . . malice in law would be implied from such conduct . . . .

Betts v. Jones, 208 N.C. 410, 181 S.E. 334, 335 (1935) (citation and internal quotation marks omitted).

11

contrary to his duty." Bailey v. Kennedy, 349 F.3d 731, 742 (4th Cir. 2003) (footnote and internal quotation marks omitted); see also Hines v. Johnson, No. 1:19cv515, 2020 WL 1516397, at *17 (M.D.N.C. Mar. 30, 2020) (explaining that "[p]ublic official immunity . . . is not available for intentional torts").

## II. Analysis

The Court should deny Defendants' Motion as to both of Plaintiff's claims. Construed in a light most favorable to Plaintiff, as required at this stage of the proceedings and despite Defendants' alternate account, the evidence reflects that Defendants suspected Plaintiff of drug possession and struck him in the torso repeatedly and in the neck, including while Plaintiff lay handcuffed on the ground. (See Docket Entry 3 at 2; Docket Entry 24 at ¶¶ 11-12, 14-20.) Considering, on those facts, "the severity of the crime," the "immediate threat [posed] to . . . officers or others, and whether [Plaintiff] . . . actively resist[ed] arrest or attempt[ed] to [flee]," Graham, 490 U.S. at 396, Defendants exercised excessive force when they, "unprovoked[, handcuffed and repeatedly struck] a nonthreatening, nonresisting [Plaintiff] to effect his arrest," Barfield v. Kershaw Cnty Sheriff's Office, 638 F. App'x 196, 203 (4th Cir. 2016). See Wiegang v. Long, C/A No. 2:19-1842, 2022 WL 2068951, at *11 (D.S.C. Feb. 28, 2022) (noting the "substantial body of caselaw [finding excessive force] when an officer strikes or continues to use force against a suspect who is

12

already restrained" and collecting Fourth Circuit cases (brackets and internal quotation marks omitted)), recommendation adopted, 2022 WL 1590994 (D.S.C. May 19, 2022); Zephrine v. Prince George's Cnty., No. 02-1769, 2006 WL 8438040, at *9 (D. Md. June 15, 2006) ("[B]eating a suspect while the suspect is restrained is not objectively reasonable.").

Likewise, because the record creates a genuine issue of material fact as to excessive force — a "higher [liability standard] than that for a normal tort action [such as battery]," Myrick, 91 N.C. App. at 215, 371 S.E.2d at 496 — a genuine issue of material fact also exists as to Plaintiff's battery claim. See Morgan v. City of Charlotte, No. 3:22cv3, 2023 WL 4002524, at *15 (W.D.N.C. June 14, 2023) (observing that a plaintiff's North Carolina "battery claim[] . . . rises and falls with the excessive force claim"), appeal filed, No. 23-1748 (4th Cir. July 18, 2023). Therefore, Plaintiff's "parallel state law claim of . . . battery is subsumed within the federal excessive force claim and [should] go[] forward . . . ." Rowland v. Perry, 41 F.3d 167, 174 (4th Cir. 1994).

Defendants maintain, however, that qualified public immunity and public official immunity shield them from liability. (See Docket Entry 34 at 1.) Yet, viewed in the light most favorable to Plaintiff, the record reflects that Defendants repeatedly struck Plaintiff as he lay handcuffed, violating the "Fourth Circuit['s]

13

. . . clearly establishe[d case law] that officers employ excessive force when they assault a . . . physically restrained [suspect]," Goodman v. Barber, No. 7:11cv153, 2012 WL 4928873, at *7 (E.D.N.C. Oct. 16, 2012), aff'd, 539 F. App'x 87 (4th Cir. 2013). See also id. at *2 (denying qualified immunity at summary judgment stage to a defendant who "hit" and "knee[d]" a "completely subdued" plaintiff). Based on the facts the Court must accept as true at this juncture, multiple Fourth Circuit decisions "ma[k]e plain enough[] . . . the excessive nature of the force used here[] . . . and [have] found excessive force when officers continued to assault non-dangerous, controlled suspects. That is precisely the case here." Lewis v. Caraballo, 98 F.4th 521, 536 (4th Cir. 2024); see also Gill v. Mallow, No. 22-2077, 2023 WL 7487165, at *4 (D. Md. Nov. 13, 2023) ("It has been the well-settled law for more than 20 years that gratuitously punching or violating the bodily integrity of an arrestee violates the Fourth Amendment."). Accordingly, qualified immunity does not entitle Defendants to judgment as a matter of law at this point in the proceedings.

Similarly, because public official immunity "is unavailable to officers who violate clearly established rights," Bailey, 349 F.3d at 742, said doctrine provides Defendants no relief at summary judgment. "Accepting the facts as [presented by Plaintiff] . . . , a man of reasonable intelligence would have known that [beating Plaintiff as he lay handcuffed] . . . was contrary to his duty,"

14

thereby "foreclos[ing] the availability of public officers' immunity" at summary judgment. Id.; see also id. at 742 n.6 ("Because we find that the acts at issue violated rights that were clearly established, an officer of reasonable intelligence would have known that the officers' actions were contrary to their duty. This is all that is required to support a finding of malice under state law, and it is clear that there is no public officers' immunity where the officers act with malice." (citation omitted)).

## **CONCLUSION**

A genuine issue of material fact exists and, construing the evidence in the light most favorable to the Plaintiff, qualified immunity and public official immunity do not shield Defendants from liability.

**IT IS THEREFORE RECOMMENDED** that the Motion (Docket Entry 33) be denied.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

February 4, 2026